# Letitia Dunham, Appellee, v. Chicago City Railway Company, Appellant.

## Gen. No. 17,131.

1. Evidence—*opinions based on subjective symptoms.* Where a physician who has treated the plaintiff professionally testifies that during an examination made for the purpose of testifying plaintiff "suffered great pain," and that "from a lack of sensitiveness over the lower part of the back," he found some injury to the spine, such answers do not necessarily imply that they were based on subjective symptoms, or were conclusions from statements or voluntary actions of plaintiff, but if cross-examination discloses the fact that such opinions or statements were based upon subjective symptoms, they should upon motion be excluded, notwithstanding the fact that the witness had previously treated the plaintiff professionally.

2. Evidence—*stating reasons for opinions.* Where an objection to a medical expert witness stating his reasons for his opinions is improperly sustained, but he is subsequently permitted to state such reasons at length and in detail, there is no substantial error.

3. Damages—*refusal to submit to physical examination.* Where plaintiff in an action for personal injuries states in cross-examination that she is willing to submit to a medical examination if her attorney tells her to do so, and her attorney refuses to answer a question whether he will permit such examination, and both the court and the counsel construe such attitudes as a refusal, and defendant's counsel comment at length on such refusal in argument to the jury, the only benefit which defendant could have derived from an express refusal before the jury is more than had by such argument of its counsel before the jury.

4. Evidence—*suppression of.* Where plaintiff in an action for personal injuries testifies that prior to her injury she was boarding several men, naming them, and the court sustains an objection to the question, "Do you know where any of them are now?" when it does not appear that any of them boarded with her after her injury or that they had any opportunity to observe her condition, the ruling is not prejudicial.

5. Practice—*improper argument.* Where counsel for defendant in his argument before the jury characterized plaintiff's case as a "frame-up" and a "fake," he is not in position to complain of severe comments by plaintiff's counsel reflecting on defendant's good faith and witnesses, where the court has sustained objections interposed to such comments.

6. DAMAGES—*excessive.*   In an action for personal injuries caused by a collision of street cars, where the question of the character and extent of plaintiff's injuries is dependant wholly upon the credibility of the several witnesses, *held,* this court is not prepared to say that the evidence does not justify a verdict for $8,000 damages. BAUME, J., dissenting.

Appeal from the Superior Court of Cook county; the Hon. THOMAS M. JETT, Judge, presiding.   Heard in the Branch Appellate Court at the October term, 1910.   Affirmed.   Opinion filed March 12, 1913. Rehearing denied April 3, 1913.

FRANKLIN B. HUSSEY and C. LeROY BROWN, for appellant; LEONARD A. BUSBY, of counsel.

JOHN R. HARRINGTON and GUERIN, GALLAGHER & BARRETT, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is a suit by appellee against appellant to recover damages for personal injuries alleged to have been occasioned through the negligence of appellant. A trial in the Superior Court resulted in a verdict and judgment against appellant for $8,000.

Upon this appeal the only grounds relied upon by appellant for a reversal of the judgment are that the damages awarded are excessive; that the court erred in its rulings on the admission of evidence; and that counsel for appellee was guilty of misconduct in his argument to the jury.

We shall notice first the errors assigned upon the rulings of the court in the admission of evidence and upon the alleged misconduct of counsel, reserving to the last a discussion of the assignment of error relating to the amount of damages.

Dr. Wilbur W. McCleary, who had treated appellee professionally from the time of her injury until six or seven weeks prior to the trial, and who had seen her professionally a week prior to an examination

made by him a week before the trial, for the purpose of qualifying himself to testify as an expert, having testified fully regarding his professional treatment of appellee and the nature and extent of her injuries, was asked on direct examination with reference to his last examination of appellee what he found regarding the conditions existing there. The witness replied that in examining the body he found she could not retain her urine; that he examined her rectum and found the sphincter muscle without resistance; and that she suffered great pain. Appellant's motion to strike out from the answer of the witness the words, "she suffered great pain" was overruled. The witness further replied, that he found there an ankylosis of the vertebrae from about the fourth vertebrae to the sacrum; that by examining the reflexes of the legs and from lack of sensitiveness over the legs and the lower part of the back he found there was some injury to the lower part of the spine. Appellant moved that that part of the answer of the witness, in which he said he found "from a lack of sensitiveness over the back, and lower part of the spine" be stricken out as subjective. The court remarked, "Yes, that is getting right close to the line, but owing to his previous attendance here it may stand." The witness further replied that he found a partial paralysis of the left leg, but not so much on the right leg and that there was a weakening in the outer muscles of the back. Appellant's motions to strike these answers were denied.

Dr. John J. Wuerth, who had treated appellee professionally as late as December, 1909, and who made two physical examinations, external and internal, of appellee in April, 1910, a month prior to the trial, was asked to state his diagnosis of her case as he then found it, based upon his medical knowledge and the actual knowledge which he had obtained from his previous examinations. The inquiry was objected to because it related to subjective matters, which objection was overruled, and the witness stated that he diag-

nosed the case as a traumatism of the lower part of the spinal cord. Over objection the witness was also permitted to state that, in his opinion, based upon his medical experience and his examination, appellee was then suffering from pain.

Both of these witnesses were conversant with the distinction between objective and subjective symptoms, and it is manifest that in the main the conditions stated as having been found by them upon their last examination of appellee were presumably predicated upon then existing objective symptoms. Their answers did not necessarily imply that the conditions stated were based upon subjective symptoms, and it does not appear that the witnesses were influenced in their conclusions by any statements made by appellee, or by any voluntary action on her part. If a cross-examination of the witnesses disclosed that their opinions or statements regarding the condition of appellee were based upon subjective symptoms observed during an examination made for the purpose of qualifying themselves to testify as experts, such opinions or statements should, upon motion, have been excluded, notwithstanding the fact that said witnesses had previously treated appellee professionally. The reasons for the distinction in this regard are well understood and the rule relating to the admission of such evidence is well settled. West Chicago St. R. Co. v. Carr, 170 Ill. 478; Greinke v. Chicago City Ry. Co., 234 Ill. 564; Shaughnessy v. Holt, 236 Ill. 485; Schmidt v. Chicago City Ry. Co., 239 Ill. 494. We perceive nothing in the cases cited, which, applied to the line of examination here involved, condemns the rulings of the trial court thereon as prejudicially erroneous.

There is no substantial ground for the objection that Dr. Kuh, called by appellant as an expert witness, was not permitted to state his reasons for his opinions. In two or more instances objections interposed to the statement by the witness of his reasons for his opinions were improperly sustained, but a careful ex-

amination of the evidence of such witness, as it appears in the record, discloses that subsequent to such erroneous rulings by the court the witness, both upon his direct and cross-examination, stated his reasons for his opinions at length and in detail.

It is next urged that the court improperly excluded evidence of appellee's refusal to submit to a medical examination. Upon this subject the record of the cross-examination of appellee discloses, in substance, the following:

Mr. Hussey: "Well, are you willing to allow a doctor to examine you?"

Mr. Guerin: "Now, that is objected to as incompetent, irrelevant, immaterial."

Mr. Hussey: "If your counsel is, are you willing?"

Mr. Guerin: "That is objected to."

The Court: "She may answer."

The Witness: "If my attorneys say so."

Mr. Hussey: "You are willing, if your attorneys say so?"

The Witness: "Not without my attorneys' advice."

Mr. Hussey: "No, but are you willing to if they don't object."

Mr. Guerin: "That is objected to."

The Court: "She may answer."

The Witness: "Whatever my attorneys tell me to do."

Mr. Hussey: "Well, Mr. Guerin, will you permit a doctor to examine this woman?"

Mr. Guerin: "I object, it is an improper question for counsel to ask me."

The Court: "Well, I will sustain the objection."

Mr. Hussey: "Without respect to knowing what your counsel say or don't say are you willing, as far as you are concerned, to be examined by a doctor?"

Mr. Guerin: "That is objected to, it has been answered."

The Court: "She has in effect answered the question."

Mr. Hussey: "Your Honor, if I understand it,

then, construed her answer covers the question I just asked her, that irrespective of what her counsel would say or not say. I would like her just as a matter of good faith, your Honor, to answer. That is all it goes to.''

Mr. Guerin: ''I object to that.''

Mr. Hussey: ''Are you willing yourself to be examined by a doctor at our request?''

Mr. Guerin: ''I object to the question, and also to the remarks of counsel.''

The Court: ''At this time I will sustain the objection.''

It is obvious from the foregoing that both court and counsel for appellant construed the attitude of appellee and her counsel as amounting to a refusal by appellee to then submit to a medical examination at the instance of appellant. Counsel for appellant in argument to the jury commented at length upon the refusal of appellee to submit to a medical examination. If the holding in City of Chicago v. McNally, 227 Ill. 14, is to be considered conclusive of the question, as it appears to be, the rulings of the trial court were more favorable to appellant than the ruling there involved and considered, but here, as in the McNally case, *supra*, ''the only benefit which appellant could have derived from an express refusal, before the jury, by the appellee to submit to a personal examination it more than had by the argument of its counsel before the jury.''

The record discloses that upon her direct examination appellee testified that at and prior to her injury she was boarding seven boarders and that upon her recross-examination by counsel for appellant she gave the names of such boarders and was then asked, ''Do you know where any of them are now?'' To this question an objection was sustained by the court. It is urged that the ruling was erroneous, because it operated to exclude testimony tending to show that appellee was suppressing evidence bearing upon the extent of her alleged injuries. It does not appear that any

of the persons named by appellee boarded with her after her injury or that they had any opportunity to observe her condition. Appellant was, therefore, not prejudiced by the ruling.

During his closing argument to the jury counsel for appellee repeatedly used language reflecting upon the good faith of the defense interposed by appellant as to the extent of appellee's injuries, and also commented with severity upon the witnesses called by appellant to testify as experts. Notwithstanding all of appellant's objections to such language were sustained, it is insisted that prejudicial and reversible error resulted. That appellee was severely injured by the negligence of appellant does not admit of doubt, yet counsel for appellant in his closing argument to the jury characterized appellee's case as "dishonest", a "frame-up", a "fraud", a "sham" and a "fake". Appellant's counsel appear to have furnished the ammunition for the explosion which followed, and is not, therefore, in a position to complain. Upon the record, as made, appellant's rights, if any, were fully protected by the action of the court in sustaining the objections interposed.

Upon the occasion of her injury, at about 6 o'clock, P. M., on July 12, 1909, appellee was sitting on the north side and about in the center of an east-bound 47th street car. As the car was crossing Wentworth avenue, she observed two cars coupled together approaching rapidly from the north and appreciating that a collision was imminent, she attempted to leave her seat, but had not wholly succeeded in doing so when the cars collided. The 47th street car was struck at about its center with sufficient force to lift the trucks from the track and to raise up the north side of the car. Appellee was thrown into the aisle upon the floor of the car and struck the small of her back against the iron upright which supported a seat on the opposite side of the car. She was carried from the car to the office of Dr. McCleary, located on the corner of the streets

named, and was placed upon an operating table, where she remained about an hour, and was then conveyed in a police ambulance to her home.

The evidence introduced on behalf of appellee tends to show that immediately following her injury, although she retained her consciousness, she suffered from severe pain and nervous shock; that while in the physician's office her clothing was not removed and no physical examination was made, but an opiate and strychnine were administered to relieve pain; that at about 8 o'clock P. M., when the physician arrived at her home, her clothing was removed and an examination of her injuries was made; that she remained in bed until September 1st, following, when she was able to sit up only a few minutes; that she had frequent spells of vomiting; that she was not able to walk until about the first of October and was unable to leave the house until November; that when she left her bed in September she found she could not retain her urine, which dribbled away when she stooped down or stood up, and that she has since been obliged to constantly wear napkins; that her rectum became relaxed and the sphincter muscle was without resistance, so that she was unable to control her bowels; that she constantly suffers severe pain in her back and legs and is unable to walk without support and unable to do ordinary housework. Dr. McCleary and Dr. Wuerth testified, in substance, that upon their first physical examination of appellee they found a great amount of swelling and tenderness on the lower part of the spinal column, extending down over the sacrum; that appellee was exquisitely sensitive over the contused area which was black and blue over the base of the spine; that there was a very tender spot along over the fourth or fifth lumbar vertebra; that there were symptoms of a fracture of the spinous process of that vertebra; that they found an injury to the lower part of the spinal column, to the muscles of the back, and to the nerves and blood vessels in the lumbar region;

that while she could move her arms and legs, she could not move the muscles in the lumbar region about the spinal column and could not flex and extend the lower part of her spinal column; that later examinations disclosed a relaxation of the rectum, vagina and mouth of the urethra; that a chemical examination of the urine disclosed no abnormality. Dr. McCleary testified that there was ankylosis of the vertebrae from the fourth vertebra to the sacrum, paralysis of the bladder and rectum and partial paralysis of the left leg.

The evidence for appellee further tends to show that at the time she was injured she was 52 years of age; that she then weighed about 160 pounds; that her previous health was good; that she has since lost about thirty pounds in weight; that her condition is permanent and is directly attributable to the injuries sustained in the collision.

Witnesses called as experts on behalf of appellant testified that in their opinion a fall such as that described by appellee could not have produced injuries to the extent claimed; that if appellee had sustained a fracture of the spinous process of the fourth or fifth lumbar vertebra, the pain would have been so intense that it would have been impossible for her to lie on her back, as she did; that ankylosis of the vertebrae in the lumbar region would produce an erectness instead of a stoop in her carriage; that paralysis of the leg, bladder and rectum, if it ever existed, would have developed wholly and immediately following an injury to the spinal cord; that partial paralysis never precedes total paralysis; that the fracture of the spinous process of a vertebra would have no effect upon the spinal cord inside the body of the vertebra or upon the nerves controlling the legs, bladder and rectum; that if the cauda equina had been injured, shock to a much greater degree and accompanied by a manifestation of different symptoms would have been present; that where there is incontinence of urine due

to paralysis the bladder would not be two-thirds full of urine (as was testified to by one of appellee's physicians), because there would be a constant dribble and the bladder would not fill to that extent; that in such case distinct abnormalities would be apparent in the urine after several months upon chemical examination; that in such case a person would not urinate on volition several times a day, as appellee did; that if appellee was affected with paralysis and confined to her bed for a number of weeks bed sores would have inevitably resulted; that certain pelvic and rectal conditions, not the result of the injury, manifest in appellee, were competent to produce the nervous disorders and bladder and rectal troubles complained of.

Appellant also introduced evidence tending to show that appellee was able to walk without assistance; that there was no apparent change in her general appearance. It also appears that two women who occasionally attended her during the time she claims to have been confined to her bed, and who assisted her in doing her housework, were not called to testify to her physical condition. Other incidents and circumstances disclosed by the record are referred to as being inconsistent with, and in contradiction of, appellee's claim as to the character and extent of her injuries.

An analysis of the testimony of the witnesses, and of the facts and circumstances in evidence, is not practicable here. A diligent examination of the evidence in the record, bearing upon the character and extent of the injuries sustained by appellee, discloses that the solution of that question is dependent wholly upon the credibility of the several witnesses who testified in the case. If the testimony of the witnesses called on behalf of appellee is true, the amount of damages awarded by the jury is not excessive; whereas, if credit be given to the testimony of witnesses called by appellant, it must be conceded that the amount of the

verdict is excessive. In this case, a majority of the court, the writer not concurring, are not prepared to say that the evidence does not justify a recovery by appellee of the amount of damages awarded by the jury.

There is no prejudicial error in the record and the judgment is affirmed.

*Judgment affirmed.*